The United States Court of Appeals for the Federal Circuit is now open and in session. God save the United States and this honorable court. The first case for argument this morning is 20-1710 Walletex Microelectronics v. Toshiba America. Mr. Neruzzi, whenever you're ready. Thank you, Your Honor, and may it please the court. Your Honors, the board erred in its rejection of the proposed amended claims with respect to the 825 patent in two respects. As to claims 25, 27, 29, 30, and 32-48, the board rejected those claims as indefinite. The board's indefiniteness rejection was erroneous on three levels. As an initial matter, the claim as proposed, both claims 25 and 27 as proposed, were unambiguous and met the reasonable certainty requirement set forth under Nautilus. Moreover, the board further ignored patentee statements clarifying and defining the scope of the claims in violation of this court's decision in Ray Packard and refused to consider, and its refusal to consider, the patentee statements as part of the final written decision renders the board's decision arbitrary and capricious under Aqua Products and this court's decision in Applications and Internet Time. And finally, Your Honors, the board wrongly read ambiguity into the claim based on purported alternative embodiments in the specification that are not in fact alternative embodiments and that in any case have no reason to be read into the language of the claim as drafted. We also challenge the board's decision with respect to enablement as to claims 28 and 30, but I'd like to start by focusing on the indefiniteness issue. Can I just ask you with regard to which claim is where on the indefiniteness? The indefiniteness also covers claim 30, right? So the only thing left for enablement, if we were hypothetically to affirm the indefiniteness, would be claim 28. Am I right about that? That's right, Your Honor. Okay, thank you. As to indefiniteness, Your Honors, the claim language clearly recites an electronic short circuit prevention device and then later refers back to that same electronic short circuit prevention device. The language also makes clear that the short circuit to be prevented is between contacts of the receptacle. Therefore, a reasonable reading of the claim, a clear and unambiguous reading of the claim when it recites preventing a short circuit between VBUS and ground contacts is to understand that those are the contacts of the receptacle. The Board erred in reading otherwise by looking to what it believed to be alternative embodiments in the specification, but when the Board actually looked at the language of the claim itself, it did not find ambiguity. And so we believe that is the fundamental beginning error in the Board's decision, that based on the language of the claim itself, there was no ambiguity and there's therefore no reason to look to passages in the specification and materials outside of the language of the claim to assess indefiniteness. Regardless, however, to the extent that the Court believes that the language of the claim could be read in multiple ways such that an ambiguity problem exists, the Board further erred by ignoring Patentee's clarifying statements as to the scope of the claim. The Patentee repeatedly stated during the oral hearing and in its briefing before the Board that the language at issue, which recites the electronic short circuit prevention device is operable to prevent a short circuit between VBUS and ground contacts, refers only to a short circuit between VBUS and ground contacts of the receptacle. And therefore, there was no basis for the Board to continue to find ambiguity in the claims in light of Patent Owner's statements. This Court has stated in N. Ray Packard that the Board may not find proposed claims to be indefinite without considering clarifying statements by the Patent Owner and the Patent Owner's explanation as to why the claim is not ambiguous. And the Board here did not follow that procedure at Setforth and N. Ray Packard. The Board's decision does not discuss why it continues to find the claims to be ambiguous in light of Patent Owner's clear statements. Those statements by Patent Owner are binding upon Patent Owner itself and bind Patent Owner vis-a-vis the rest of the world. Therefore, there is no risk that if the claims were issued as drafted in light of Patent Owner's statements that the public and MSI and Toshiba would continue to find ambiguity and uncertainty as to the scope that the claims cover. Your Honors, respectfully, the Board's failure to even address Patent Owner's statements on these issues and the Board's final written decision constitutes arbitrary and capricious error under both AWQA products and this Court's decision in Applications and Internet Time. Is it your suggestion that the Board could never find indefiniteness as long as the Patent Owner in the patent file or somewhere says, well, it's not indefinite, this is what I mean, that that's sufficient to obviate an indefinite conclusion even if the claims on the spec lead you there? So, Your Honor, in the context, let me just start by saying I don't think we need a rule that is as sweeping as that for purposes of this case. The salient issue here is more specifically that the Board did not address and consider the Patent Owner's statements in the final written decision. However, the question that you raise is often obviated in the context of normal prostitution proceedings because in that context, the Patent Owner can simply continue to amend the claims to resolve any potential ambiguity within the language of the claims themselves. This context is somewhat different because it's a motion to amend in an inter-parties review proceeding. And in this context, the question is whether the Board should read the claims consistently with the Patent Owner's proposed understanding and intent of the claims and assessing indefiniteness. And we believe the answer to that question is yes and that this Court's precedent supports that. This is Judge Dyke. I have a question. In the course of these IPRs where there's a motion for leave to amend, is there any opportunity to further change the claim language that's included in the amendment or are you stuck with the language as it's originally presented? Judge Dyke, in the context of this motion to amend, at the time that the motion was presented and the rules that applied to the motion at the time, we were stuck with the claims as proposed. Since the Board has... Based on the qualifications there, is that no longer the case? Have they changed the rules or something? Yes, that's what I was getting to. The Board has since offered an expanded procedure where it is possible to potentially submit a further round of amendments after obtaining some feedback from the petitioner and the Board with respect to original proposed amendments. But that process was not available to Patent Owner in this proceeding at the time. So going forward, your argument that the Board should have considered just because everyone was on notice because the Patent Owner said what it meant wouldn't carry the day necessarily going forward and shouldn't carry the day because if the Patent Owner means to clarify it, he will have an opportunity to do that, right? Your Honor, I think it will simply just become less salient because of that opportunity. So when the opportunity exists to directly modify the proposed claim language to resolve any concerns by the Board, then I expect that Patent Owners will take advantage of that and they will not need to come to this particular issue that we face today. But I think the fundamental principle that the Board should acknowledge the intended claim scope that the Patent Owner puts forth during prostitution remains correct because that statement, those definitional and disavowing statements by the Patent Owner are binding on the Patent Owner and limit the claim scope going forward. So there's no particular reason for the Board to refuse to accept and acknowledge those statements and to continue to read ambiguity into the claims notwithstanding the Patent Owner's statements. Well, except that you end up with a situation in which the claims which are read by the public are confusing and ambiguous. And surely the Patent Office has an interest in making sure that the claim language on its face is understandable by people so that they don't have to go to the prosecution history to figure out what the claims mean. Well, Judge Stack, I understand that point. But the reality is that in almost every patent claim interpretation exercise, there will be some question in some reader's mind as to certain claim scope issues. And those questions are almost never fully resolved by reading the explicit language of the claims themselves. They require in almost every instance looking at least to the specification, considering the knowledge of the ordinary artisan and the meaning of the terms in the context of the invention, and looking to the prosecution history to see if there are clarifying or disavowing statements made. It's an exercise that I certainly undertake with respect to many patent claims that I look at. And when there are those sorts of clear statements that resolve the ambiguity that might otherwise exist in the mind of the reader, when those are found in the prosecution history, we know that they are dispositive. And so no further ambiguity can remain beyond that point. But I think, Your Honors, that the board here erred at a further, even more basic level by simply not addressing the patent owner's statements and explaining why it continued to find ambiguity in the claims, not withstanding those statements as part of the board's final written decision. The standard here is not perfect certainty. The standard is reasonable certainty. Go ahead. Finish your sentence. And the board did not explain in its decision why, in light of the patent owner's statements, it continued to find a lack of reasonable certainty as to the scope of the proposed claims. Okay. We'll reserve your rebuttal and let's hear from Mr. Clausen. Thank you. May it please the court. I'd like to first address the issue that appellant raised regarding the finding of ambiguity. On the board's decision, which is at APPX 78, the board found that substantial evidence weighed in favor of creating an ambiguity and failing to delineate with reasonable certainty the scope of the claim. That's at the bottom of APPX 78. So the board did find that the claims were ambiguous. And it did that by taking a look at the actual claim language. Mr. Clausen, I had to read it twice, too, because on page 77, which is the real important paragraph, I think, in the board's opinion, it does say that they agree with the patent owner, blah, blah, blah, that the claim limitation at issue. Now, maybe the operative word is could be referring to the context of the receptacle. And then later on in the paragraph, they say a person of ordinary skill in the art could draw the conclusion that the last limitation is referring to the contents of the receptacle. So you read that as saying it's a possible reading, but it's not the only possible reading, and therefore it's ambiguous? Chief Judge Prost, yes, that's exactly how I read it. The term could be referring is one possible interpretation of the claim. If you look to the next page, 78, they use that same could be referring to another interpretation of the claim. But those two interpretations don't conflict with one another. The second interpretation of the claim actually encompasses the first interpretation of the claim. So they're not in tension. The complete understanding of the claim is that the VBUS and ground contacts could refer to any of the three sets of contacts that are recited earlier in the claim. So what is your response to your friend's argument that there was certainty introduced by the patent owner's statements and that that ought to be sufficient to remove any ambiguity and allow the amendment, particularly in a circumstance where he didn't have a chance to actually amend the claim language under the procedures existing at the time? So first of all, I don't think that there was any sort of disclaimer or disavowal here in this case. What happened here was the patent owner proposed a claim construction, and the board rejected that claim construction. Now the patent owner is characterizing that construction as how a person of ordinary skill in the art would understand the claim, and somehow that means that there was a disclaimer. But that's an ordinary claim construction argument. The argument is how a person of ordinary skill in the art would understand the claims. That does not disclaim claim scope. It's a claim construction proposal, which the board rejected. So you think if this issue were litigated, the other side would not be bound by the statements they're talking about? In this case, that's correct, Your Honor. Okay. Suppose that they had made a clear and unequivocal disclaimer. Given the procedural posture, would that be sufficient to eliminate the ambiguity? In this case, not necessarily. The board is not required to accept a disclaimer, and we've cited the Tempo Lighting case on that point. So merely because they raised a disclaimer doesn't mean that the board is required to accept it, particularly here where the disclaimer is in conflict with the very evidence that they cited for written description support of the same claim element. I'm not familiar with the Tempo case. What does that hold? Well, it's at page 978, and let me give you the full citation for Tempo Lighting. That is 742F3rd973. And that's at 978. Is it cited in red? It is cited in red. Okay. And what does it hold? So the operative portion of the decision is on page 978, the first column on the left near the bottom. This court also observes that the PTO is under no obligation to accept a claim construction proffered as a prosecution history disclaimer, which generally only binds the patent owner. So the PTO is not under an obligation to accept the statement made by the patent owner as a disclaimer? Because it's just a claim construction statement. Correct. Anything further? Yes, Your Honor. I also want to address the issue of the allegation that the board did not address statements raised during either oral argument or in the briefing regarding this disclaimer. And that's at APPX 75. Yep. So the board, you can see down at the bottom of APPX 75, the board cited both the reply and the transcript. And they're block quoted there. So it's hard for me to understand how the board somehow overlooked or did not consider this evidence. It's clearly in the board's final written decision and formed part of the findings of fact that are now reviewed for substantial evidence. And substantial evidence does support the finding of ambiguity. Well, the question is, I think, Your Friend, in fairness, I mean, that is cited in the party's arguments. But I think you look to answer the question by looking at the board's analysis. So where does the board's analysis, which begins on APPX 76, deal with that? So I can see that the board's analysis doesn't actually quote. Okay. Well, I think that's what he meant. Now, he may be right or wrong. But I think in fairness to the other side, it's not like they were making an argument that is not accurate. Right? Oh, I'm sorry. I don't intend to imply that the argument is inaccurate. I just don't think it fully contemplates what the board did here. Fine. So Appellant raised the issue of enablement. He didn't discuss it very much. But there is no dispute that the full scope of claims 28 and 30 is impossible. Both claims recite connectors of a size that cannot physically mate with the claimed USB 1.0 sockets. Both experts agreed on that, Dr. Baker at APPX 2607 and Dr. Fernald at APPX 2711. And the claim is impossible, or that portion of the claim is impossible. And so the claim is not enabled. And if the court has no further questions, I will cede the rest of my time. Thank you. Mr. Neruzzi, you have a few minutes left, some time left. Thank you, Chief Judge Prost. A few brief points. First of all, you're absolutely correct that in Appendix 77, the board begins by acknowledging that the claim as written would be read in the way that Pat Oner has also argued that the relevant contacts are those of the receptacle. I didn't hear the word you used. Did you say would or could be read? They said could. Well, I said would. The board's decision says would, and then it says could, right? So if we look at the actual language, it says a person having ordinary skill in the art would have understood that the claim limitation issue could be referring to the contacts of the receptacle. So that's the exact language they used. Yeah, but could is the operative word, really, I think, reading the sentence fairly. They're saying that they could have read it that way. And let's accept that for the moment and contemplate that the could suggests that there's some other possible reading. The board never identifies another possible reading based on the language of the claim. What they do is they say, however, the sections of the 870 application lead us to an alternative construction. And we think that's a fundamental error there because the ambiguity, if any, that they need to rely on to go down the path of indefiniteness needs to be within the language of the claim itself, not based on alternative embodiments that they find in the specification. If there are, indeed, different embodiments, they shouldn't be read into the claim language if the claim language does not admit them. Well, they kind of tie up the bow at 78, right, because they say based on the lack of specificity in the language and the stuff in the application, which further clarifies that when they use the word could, yeah, it could mean this, it could mean that, it could mean any one of a number of things. So I'm not sure how far their use of the word could get you. Well, Your Honor, the way that I read this decision and the way I think it does read in fairness is that they got to the place of the statement that you make at the bottom of Appendix 78 by first identifying the ambiguity in the specification, not in the language of the claim. And so I think they arrive at the conclusion of ambiguity and the susceptibility to multiple readings, not based on an actual ambiguity in the claim language, but one reading of the claim language, which is the only reading that they put forth in Appendix 77, and then, if I may finish, Your Honors, and then by looking to these supposedly alternative embodiments in the specification. I would like to address a couple other points, but I believe my time is up. So if there are no further questions, I will stop here. Thank you very much. We thank both sides, and the case is submitted. Thank you.